1
2
3
4
5
6                 **UNITED STATES DISTRICT COURT**

7                    **DISTRICT OF NEVADA**

8

9 JEMAR D. MATTHEWS,

10      Petitioner,                    2:14-cv-00472-GMN-PAL

11 vs.
                             **ORDER**

12 DWIGHT NEVEN, *et al.*,

13      Respondents.

14 _____/

15

16 <u>Introduction</u>

17      This action is a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, by

18 Jemar D. Matthews, a Nevada prisoner.  The court concludes that Matthews' trial was rendered

19 unfair by improper comments made by the prosecutor in her rebuttal closing arguments, and that the

20 prosecutorial misconduct was not harmless.  The court grants Matthews a writ of habeas corpus.

21 <u>Background</u>

22      Matthews was convicted on July 17, 2007, following a jury trial in Nevada's Eighth Judicial

23 District Court, in Clark County, of conspiracy to commit murder, murder with use of a deadly

24 weapon, three counts of attempted murder with use of a deadly weapon, possession of a sawed off

25 rifle, conspiracy to commit robbery, two counts of robbery with use of a deadly weapon, and two

26 counts of assault with a deadly weapon.  *See* Judgment of Conviction, Exhibit H (ECF No. 20-3)

(The exhibits referred to in this order were filed by respondents, and are found in the record at ECF

Nos. 17, 18, 19 and 20.).  He was sentenced to the following prison terms, to be served concurrently:

| Count 1 | conspiracy to commit murder | 26 to 120 months |
| Count 2 | murder with use of a deadly weapon | two consecutive sentences of 20 years to life |
| Count 3 | attempted murder with use of a deadly weapon | two consecutive sentences of 48 to 240 months |
| Count 4 | attempted murder with use of a deadly weapon | two consecutive sentences of 48 to 240 months |
| Count 5 | attempted murder with use of a deadly weapon | two consecutive sentences of 48 to 240 months |
| Count 6 | possession of a sawed off rifle | 12 to 48 months |
| Count 7 | conspiracy to commit robbery | 12 to 72 months |
| Count 8 | robbery with use of a deadly weapon | two consecutive sentences of 40 to 180 months |
| Count 9 | robbery with use of a deadly weapon | two consecutive sentences of 40 to 180 months |
| Count 10 | assault with a deadly weapon | 16 to 72 months |
| Count 11 | assault with a deadly weapon | 16 to 72 months |

*See id.*

In its order affirming the judgment of conviction, the Nevada Supreme Court described the

factual background of the case as follows:

> In this case, appellant Jemar Matthews and three other young men walked up to a group of people standing outside a friend's house and opened fire, killing one victim with a shot to the head and injuring another.  In attempting to flee the area, the shooters robbed a vehicle at gunpoint and a police chase ensued, resulting in Matthews' capture.

Order of Affirmance, Exhibit J, p. 1 (ECF No. 20-5, p. 2).  The Nevada Supreme Court affirmed the

judgment of conviction on June 30, 2009.  *See id.*  The court then denied Matthews' petition for

rehearing and his petition for en banc reconsideration.  *See* Order Denying Rehearing, Exhibit L

(ECF No. 20-7); Order Denying En Banc Reconsideration, Exhibit N (ECF No. 20-9).

On December 14, 2010, Matthews filed a post-conviction petition for writ of habeas corpus in the state district court. *See* Petition for Writ of Habeas Corpus, Exhibit O (ECF No. 20-10); Amended Supplemental Points and Authorities in Support of Petition for Writ of Habeas Corpus (Post-Conviction), Exhibit P (ECF No. 20-11). The state district court held an evidentiary hearing (*see* Recorder's Transcript of Proceedings, Exhibit Q (ECF No. 20-12)) and then denied the petition in a written order filed on November 13, 2012. *See* Findings of Fact, Conclusions of Law and Order, Exhibit R (ECF No. 20-13). Matthews appealed and the Nevada Supreme Court affirmed on January 16, 2014. *See* Order of Affirmance, Exhibit T (ECF No. 20-15).

This court received Matthews' federal habeas petition, initiating this action, *pro se*, on March 28, 2014 (ECF No. 6). The court granted Matthews' motion for appointment of counsel, and appointed counsel to represent him. *See* Order entered August 29, 2014 (ECF No. 5); Order entered September 10, 2014 (ECF No. 9). With counsel, Matthews filed a first amended habeas petition (ECF No. 14) on January 9, 2015. Matthews' first amended petition asserts the following claims:

1. "Mr. Matthews' rights to [a] fair and impartial trial, due process, and equal protection of the law under the Fifth, Sixth and Fourteenth Amendments to the Constitution were violated in his state court prosecution because there was not sufficient evidence on which to convict him." First Amended Petition (ECF No. 14), p. 7.

2. "Mr. Matthews' rights to a fair trial, due process and equal protection of the law were abrogated in violation of [the] Fifth, Sixth and Fourteenth Amendment guarantees by the pervasive prosecutorial misconduct evidenced during trial and at rebuttal closing." *Id*. at 21. Claim 2 includes four subclaims:

  (a) the prosecutor committed misconduct by urging the jurors to stare at Matthews and scrutinize his attire;

  (b) the prosecutor committed misconduct by questioning Matthews' opposition to a key piece of evidence, gunshot residue found on a red glove;

  (c) the prosecutor committed misconduct by "painting Mr. Matthews in the light of Mr. Joshlin's actions by referring to 'they' and 'them'" during trial and closing arguments; and

  (d) the prosecutor committed misconduct by having a witness read from a SCOPE printout containing Matthews' criminal history to establish his height, and commenting that the printout contained arrest information.

3.     "Mr. Matthews' constitutional rights under the Sixth, Fifth and Fourteenth Amendment guarantees to a fair trial, due process and equal protection under the law were violated when an unqualified expert was allowed to testify regarding gun residue on a red glove which was unconnected to any crime and which further was unconnected to Mr. Matthews as well as being unacceptable as unproven and was hypothetical not actual evidence." *Id.* at 31 (as in original).

4.     "Mr. Matthews' Fifth, Sixth and Fourteenth Amendment rights to due process and equal protection were violated when the trial court allowed the prosecutor and his witness to vouch that they, in fact, had the 'right guy.'" *Id.* at 37.

5.     "The district court erred when it stated it had no discretion to allow additional peremptory challenges, and violated Mr. Matthews' Fifth, Sixth and Fourteenth Amendment rights to due process and a fair trial." *Id.* at 40.

6.     "Mr. Matthews' conviction and sentence are unconstitutional, in violation of his Sixth Amendment right to effective assistance of counsel, and his Fourth and Fifth and Fourteenth Amendment right to due process, fair trial and equal protection." *Id.* at 42. Specifically, trial counsel was ineffective for not moving to sever the charges against him from the charges against his codefendant. *Id.* at 42-48.

On July 13, 2015, respondents filed a motion to dismiss, arguing that Claims 2c, 3, 4 and 5 are unexhausted in state court, and that Claims 1, 3, 4 and 5 fail to state claims cognizable in this federal habeas corpus action. *See* Motion to Dismiss (ECF No. 16), pp. 8-12. The court resolved the motion to dismiss on November 13, 2015, ruling that Claims 2c, 3 and 5 are unexhausted, and declining to reach, on the motion to dismiss, the question of the cognizability of Claims 1, 3, 4 and 5. *See* Order entered November 13, 2015 (ECF No. 24). With respect to Claims 2c, 3 and 5, the court granted Matthews an opportunity to make an election, to either abandon those claims, or, alternatively, file a motion for stay, requesting a stay of this action to allow him to return to state court to exhaust them. *See id.* at 9-10. Matthews elected to abandon the unexhausted claims. *See* Notice of Abandonment (ECF No. 25); Declaration of Jemar Matthews (ECF No. 26).

Respondents filed an answer on April 13, 2016, responding to Matthews' remaining claims (ECF No. 32). Matthews filed a reply on June 16, 2016 (ECF No. 33).

Discussion

    28 U.S.C. § 2254(d)

A federal court may not grant an application for a writ of habeas corpus on behalf of a person in state custody on any claim that was adjudicated on the merits in state court unless the state court decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by United States Supreme Court precedent, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding.  28 U.S.C. § 2254(d).  A state-court ruling is "contrary to" clearly established federal law if it either applies a rule that contradicts governing Supreme Court law or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts.  *See Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).  A state-court ruling is "an unreasonable application" of clearly established federal law, under section 2254(d) if it correctly identifies the governing legal rule but unreasonably applies the rule to the facts of the particular case.  *See Williams v. Taylor*, 529 U.S. 362, 407-08 (2000).  To obtain federal habeas relief for such an "unreasonable application," the petitioner must show that the state court's application of Supreme Court precedent was "objectively unreasonable."  *Id*. at 409-10; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).  Or, in other words, habeas relief is warranted, under the "unreasonable application" clause of section 2254(d), only if the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

    Claim 1

In Claim 1, Matthews claims that his federal constitutional rights were violated because there was insufficient evidence to convict him.  *See* First Amended Petition (ECF No. 14), pp. 7-20.

Matthews asserted this claim on his direct appeal.  *See* Appellant's Opening Brief, Exhibit I, pp. 7-16 (ECF No. 20-4, pp. 13-22).  The Nevada Supreme Court denied the claim on its merits without discussion.  *See* Order of Affirmance, Exhibit J, p. 5, footnote 3 (ECF No. 20-5, p. 6); *see*

1   *also Harrington*, 562 U.S. at 99 (when state court summarily denies a claim without discussion,

2   federal habeas court presumes that the claim was adjudicated on its merits); *Johnson v. Williams*,

3   133 S.Ct. 1088, 1096 (2013) (*Harrington* presumption applies when state court's decision denying

4   relief discusses some claims, but is silent with respect to other claims).  When the state court has

5   denied a federal constitutional claim on the merits without explanation, the federal habeas court

6   "must determine what arguments or theories supported or ... could have supported, the state court's

7   decision; and then it must ask whether it is possible fairminded jurists could disagree that those

8   arguments or theories are inconsistent with the holding in a prior decision of [the United States

9   Supreme Court]."  *Harrington*, 562 U.S. at 102.

10      This court finds reasonable the Nevada Supreme Court's ruling that there was sufficient

11   evidence to support Matthews' conviction; fairminded jurists could find that ruling to be consistent

12   with Supreme Court precedent.

13      A federal habeas petitioner who alleges that the evidence at trial was insufficient to support

14   his conviction states a constitutional claim that, if proven, entitles him to federal habeas relief.  *See*

15   *Jackson v. Virginia*, 443 U.S. 307, 321, 324 (1979).  The Supreme Court has emphasized, however,

16   that "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two

17   layers of judicial deference."  *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam).

18      A court reviewing a state court conviction does not simply determine whether the evidence

19   established guilt beyond a reasonable doubt.  *See Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1993);

20   *see also Coleman*, 132 S. Ct. at 2065.  Rather, the question is "whether, 'after viewing the evidence

21   in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

22   elements of the crime beyond a reasonable doubt.'"  *Payne*, 982 F.2d at 338 (quoting *Jackson*, 443

23   U.S. at 319) (emphasis in original).  Only if no rational trier of fact could have found proof of guilt

24   beyond a reasonable doubt is habeas relief warranted.  *Jackson*, 443 U.S. at 324; *Payne*, 982 F.2d at

25   338.  In applying this standard, a jury's credibility determinations are entitled to near-total deference.

26   *See Schlup v. Delo*, 513 U.S. 298, 330 (1995); *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

28 U.S.C. § 2254(d) imposes a second layer of deference:  the state court's decision denying a sufficiency of the evidence claim may not be overturned on federal habeas unless the decision was "objectively unreasonable."  *See Williams*, 529 U.S. at 409-10; *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012) (quoting *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam)).

The crimes for which Matthews was convicted involved:  a shooting in which nearly forty shots were fired at four people, leaving one dead and another injured; an armed robbery of an automobile a few minutes later and about a block away; a car chase, during which the driver leaned out of the stolen car brandishing a sawed-off rifle; and then a foot chase, about an hour to an hour and a half after which Matthews was found by a police officer with a police dog, in the yard of a house about a block from where the foot chase ended.  The circumstantial evidence -- most importantly, the proximity in time and distance of the auto theft to the shooting; the timing and location of the apprehension of Matthews with respect to the car and foot chases; the sawed-off rifle, of the same caliber that killed the murder victim, found near where the car chase ended and the foot chases began; and a red glove, with gunshot residue on it, found about a block from where Matthews was apprehended -- pointed, albeit somewhat obliquely, to Matthews as one of the perpetrators of the murder, robbery and other crimes.

Moreover, Brian Walter and Bradley Cupp, the two police officers who pursued suspects from the scene of the auto theft, identified Matthews at trial as the driver of the stolen car.  *See* Testimony of Brian Walter, Transcript of Trial, May 8, 2007, Exhibit B, pp. 242-47 (ECF No. 17-3, pp. 43-48); Testimony of Bradley Cupp, Transcript of Trial, May 9, 2007, Exhibit C, pp. 55-56 (ECF No. 18-1, pp. 56-57).  Also, Walter identified Matthews as the suspect he chased on foot, stating that he got "a good look at his face," and that he recognized him, as "he appeared to be somebody that [he] had made contact with before."  *See* Testimony of Brian Walter, Transcript of Trial, May 8, 2007, Exhibit B, p. 246 (ECF No. 17-3, p. 47).  Walter also testified that, after Matthews was arrested, he viewed Matthews and identified him as the person he had chased.  *See id*. at 260-63 (ECF No. 17-3, pp. 61-64).  Defense counsel extensively -- and, in this court's view, effectively --

1  cross-examined Walter and Cupp (*see* discussion of Claims 2a and 2b, below), and Matthews argues

2  that their identifications of him were not credible; however, the credibility of Walter and Cupp was

3  for the jury to determine, and the jury apparently found their testimony believable.  That

4  determination by the jury is beyond the scope of review of this federal habeas court.  *See Schlup*, 513

5  U.S. at 330; *Bruce*, 376 F.3d at 957-58 ("Except in the most exceptional of circumstances, *Jackson*

6  does not permit [the Court] to revisit ... credibility determinations.").

7       Also, the court notes that there were obvious weaknesses in the State's case against

8  Matthews.  There was no evidence directly connecting Matthews to either the shooting or the auto

9  theft; this distinguishes the case against Matthews from the case against his codefendant, Pierre

10  Joshlin, who was chased on foot from where the car chase ended to where he was found hiding in a

11  garbage dumpster with a handgun that was linked to the scene of the shooting.  Furthermore, there

12  was a lapse of an hour to an hour and a half from when Walter terminated his foot chase to when

13  Matthews was found, about a block away, hiding in a back yard.  And, perhaps most notably, none of

14  the testifying victims identified Matthews as one of the assailants, and none gave descriptions of

15  assailants closely matching Matthews.  *See* discussion of Claims 2a and 2b, below.

16       However, despite the weaknesses in the State's case against Matthews, and while there was

17  no direct evidence placing Matthews at the scene of either the shooting or the auto theft, viewing the

18  evidence in the light most favorable to the State, the Nevada Supreme Court did not rule in an

19  objectively unreasonable manner in concluding that the jury could reasonably have found, from the

20  circumstantial evidence and from the testimony of Walter and Cupp, that Matthews conspired to

21  commit, and participated in the commission of, the charged crimes.  The Nevada Supreme Court's

22  ruling on this claim was not contrary to, or an unreasonable application of, *Jackson*, or any other

23  Supreme Court precedent, and was not based on an unreasonable determination of the facts in light

24  of the evidence.  The court will deny Matthews habeas corpus relief with respect to Claim 1.

25

26

Claims 2a and 2b

In Claim 2a, Matthews claims that his federal constitutional rights were violated on account of prosecutorial misconduct, because the prosecutor urged the jurors to stare at Matthews and Joshlin, his codefendant, and scrutinize their attire, and asked, rhetorically: "How innocent do they look?"  *See* First Amended Petition, pp. 21-22.  In Claim 2b, Matthews claims that his federal constitutional rights were violated on account of prosecutorial misconduct, because the prosecutor argued that Matthews' and his codefendant's challenge of the evidence of gunshot residue on a red glove found about a block from where Matthews was apprehended suggested that they were guilty -- the prosecutor argued, "If we have the wrong guys and it's not them, why do they care so much about gunshot residue being found on the gloves?"  *See id*. at 22.

Matthews asserted these claims on his direct appeal.  *See* Appellant's Opening Brief, Exhibit I, pp. 20-24 (ECF No. 20-4, pp. 26-30).  The Nevada Supreme Court denied the claims, as follows:

Comment directing the jurors to scrutinize Matthews' attire

> At trial, a group of youths dressed in oversized white T-shirts and baggy shorts attended the proceedings and were involved in a disturbance in the halls outside the courtroom.  Then, during closing argument, in an attempt to associate Matthews with the troublemaking youths, the prosecutor directed the jurors to stare at Matthews and his co-defendants, and take note of their attire.

> Asking the jury to infer a defendant's guilt based solely on his or her appearance and demeanor at trial is improper.  *Cf. Nau v. Sellman*, 104 Nev. 248, 251, 757 P.2d 358, 360 (1988) (stating that an expert witness' comment that the defendant "acted like a guilty guy" during the preliminary hearing was improper); *see, e.g.*, *United States v. Schuler*, 813 F.2d 978, 981-82 (9th Cir. 1987) (concluding that a prosecutorial comment on a defendant's nontestifying behavior impinges on this constitutional right to a fair trial and his right not to testify); *United States v. Wright*, 489 F.2d 1181, 1185-86 (D.C. Cir. 1973) (stating that the prosecutor improperly directed the jury, in its deliberations, to consider the defendant's demeanor during trial).  Here, since the prosecutor clearly urged the jury to take note of Matthews' attire and thus infer his guilt by equating him with the troublemaking youths, we conclude that he comment was improper.

Comment regarding Matthews' strenuous opposition to a key piece of evidence

> Throughout trial, Matthews strenuously opposed evidence of gunshot residue that was found on a red glove that was linked to him and the commission of the crimes.  Focusing on Matthews' opposition to that evidence during its closing argument, the prosecutor commented to the jurors that, "[i]f we have the wrong guys

1    and it's not them, why do they care so much about the gunshot residue being found
     on the gloves?"

2

3    A defendant has the right to challenge the evidence against him, *see
     Hernandez v. State*, [124 Nev. 978, 990-91], 194 P.3d 1235, 1243 (2008), and this
     court has repeatedly stated that it is improper for a prosecutor to disparage legitimate

4    defense tactics. *See, e.g., Butler v. State*, 120 Nev. 879, 898, 102 P.3d 71, 84 (2004).

5    Here, the prosecutor's statement directed the jury to infer Matthews' guilt as a
     result of his strenuous opposition to the red glove and the gunshot residue discovered

6    thereon. Since the prosecutor's statement disparaged Matthews' defense and
     denigrated his right to challenge a key piece of evidence against him, we conclude

7    that the comment was improper.

8    The misconduct was harmless

9    Although the two comments mentioned above were improper, since there was
     significant evidence indicating that Matthews participated in the shooting, robbery,

10   and police chase (a pursuing officer identified Matthews as the driver in possession of
     the rifle, the bullet that killed the victim came from the same type of rifle in

11   Matthews' possession, the red glove found near where the police apprehended
     Matthews tested positive for gunshot residue, and Matthews closely matched the

12   description of the shooting and robbery suspects), we conclude that the prosecutor's
     misconduct was harmless. *See Smith v. State*, 120 Nev. 944, 947-48, 102 P.3d 569,

13   572 (2004). Therefore, reversal on these grounds is unwarranted.

14   Order of Affirmance, Exhibit J, pp. 2-4 (ECF No. 20-5, pp. 3-5) (footnote omitted).

15   Prosecutorial misconduct warrants federal habeas relief if the prosecutor's actions "so

16   infected the trial with unfairness as to make the resulting conviction a denial of due process."

17   *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotation marks omitted).

18   A defendant's constitutional right to due process of law is violated if the prosecutor's misconduct

19   renders a trial "fundamentally unfair." *Id*. at 181-83; *see also Smith v. Phillips*, 455 U.S. 209, 219

20   (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the

21   fairness of the trial, not the culpability of the prosecutor"). Claims of prosecutorial misconduct are

22   reviewed "on the merits, examining the entire proceedings to determine whether the prosecutor's

23   [actions] so infected the trial with unfairness as to make the resulting conviction a denial of due

24   process." *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (citation and internal quotation marks

25   omitted); *see also Greer v. Miller*, 483 U.S. 756, 765 (1987); *Turner v. Calderon*, 281 F.3d 851, 868

26   (9th Cir. 2002). If there is constitutional error, a harmless error analysis is applied; the error

1  warrants relief if it "had substantial and injurious effect or influence in determining the jury's

2  verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (citation and internal quotation marks

3  omitted); *Wood v. Ryan*, 693 F.3d 1104, 1113 (9th Cir. 2012).

4        The comments of the prosecutor in her rebuttal closing arguments regarding the appearance

5  of the defendants, and the resulting objections of defense counsel, which were overruled by the trial

6  court, were as follows:

> 7      [PROSECUTOR]:  ... And I'm not going to talk to you about the burden of
> proof.  You know that's something we talked about at the beginning of trial.  Now it's
> 8  the end of the trial.  At the beginning of trial all you hear about is how they're
> presumed innocent, believe they're innocent, innocent, innocent, innocent, you
> 9  haven't heard anything, you don't know anything, they're innocent.  Now you know
> everything.
> 10
>     How innocent do they look to you?  Take a look over there.  How innocent do
> 11  they look?  You heard all the evidence.
>
> 12      [DEFENSE COUNSEL]:  I'm going to object, Your Honor, to that.
>
> 13      THE COURT:  It's argument.
>
> 14      [DEFENSE COUNSEL]:  Telling them look at them to see if they look
> innocent or not?  I think that's improper.
> 15
>     THE COURT:  Noted for the record.
> 16
>     [PROSECUTOR]:  There's nothing improper about it.  Take a look at them.
> 17  Stare at them....
>
> 18              *  *  *
>
> 19      And if that's not enough, well, Officer Walter is lying to you because he told
> you that he's wearing his uniform in court because he has to and we all know that
> 20  police officers don't ever wear uniforms.  How crazy is that, a police officer in a
> uniform?  That's a ridiculous statement.  Now, come on.
> 21
>     And so what if Officer Walter and Officer Cupp and every other witness who
> 22  testified wanted to come in here and make a good impression for you?  So what?
> Does that mean they're lying?  Look at these two defendants.  What, you think they
> 23  walk around the street wearing those white shirts and ties?  Come on.
>
> 24      [DEFENSE COUNSEL]:  Object, Your Honor.  Now she's disparaging the
> defendants and how they're dressed today.
> 25
>     THE COURT:  Noted for the record.
> 26

1    Transcript of Trial, May 11, 2007, Exhibit E, pp. 66, 81 (ECF No. 19-3, pp. 67, 82).

2          "[O]ne accused of a crime is entitled to have his guilt or innocence determined solely on the

3    basis of the evidence introduced at trial, and not on grounds ... not adduced as proof at trial." *Taylor*

4    *v. Kentucky*, 436 U.S. 478, 485 (1978).  The appearance of the defendants at trial in this case was not

5    evidence.  *See United States v. Schuler*, 813 F.2d 978, 979-82 (9th Cir. 1987) (holding that

6    prosecutor's comments about defendant's behavior during trial were improper).  The prosecutor's

7    comments about the defendants' appearance -- that they did not "look" innocent -- were, in this

8    court's view, plainly improper.  There was nothing for the jury to see from looking at the defendants

9    other than that they were young black men.  Moreover, as the Nevada Supreme Court recognized, the

10   prosecutor might have made the comments in an attempt to associate the defendants with youths who

11   caused a disturbance outside the courtroom during the trial.  *See* Order of Affirmance, Exhibit J, p. 2

12   (ECF No. 20-5, p. 3) ("in an attempt to associate Matthews with the troublemaking youths"); *see*

13   *also* Transcript of Trial, May 8, 2007, Exhibit B, pp. 119-20 (ECF No. 17-2, pp. 120-21) (discussion

14   on record, out of presence of jury, regarding the disturbance).  Certainly, it was unnecessary for the

15   prosecutor to direct the jury's attention to the appearance of the defendants in order to argue that the

16   State had met its burden of proof.

17         The comments of the prosecutor regarding the defendants' challenge of the evidence

18   concerning the gunshot residue found on the red glove were also improper.  Those comments were as

19   follows:

20              [PROSECUTOR]:  ... And then finally, they talk to you about the gunshot
              residue and how terrible she [the witness who testified about the gunshot residue
21            found on the red glove] was because she's just a lab assistant.  How rude and
              insulting is that?  I'm glad she's not here to hear that.  As if they haven't disparaged
22            enough people, the police, me and [the other prosecutor], now let's go after her, she's
              just a lab assistant.  Let me put it to you this way.  If we have the wrong guys and it's
23            not them, why do they care so much about gunshot residue being found on the
              gloves?
24
              [DEFENSE COUNSEL]:  And I'll object to that, Your Honor, as to the caring
25            and the quality of the evidence.  It's not appropriate.

26            THE COURT:  Noted for the record.  It's argument.

12

1

2

3

4

         [PROSECUTOR]:  Why are they arguing to you about how her tests were no good and she's just a lab assistant and she doesn't know what she's doing?  Because you know what the implication is when they sit up here and they say she's just a lab assistant and she told you about molecules and how they fall off and that -- why are they telling you all of that?  If we have the wrong guys, why do they care if there's gunshot residue on those gloves or not?  Think about that.

5 Transcript of Trial, May 11, 2007, Exhibit E, pp. 86-87 (ECF No. 19-3, pp. 87-88).

6        A criminal defendant has a right to cross-examine witnesses presented by the prosecution,

7 and the defendant's cross-examination of a prosecution witness is not evidence of consciousness of

8 guilt.  *See Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (Confrontation Clause of Sixth Amendment

9 secures for the criminal defendant the right to cross-examine a witness against him); *see also* Answer

10 (ECF No. 32), pp. 23-24 (respondents appear to concede that the argument was improper).

11        While this court agrees with the Nevada Supreme Court that the arguments of the prosecutor

12 that are the subjects of Claims 2a and 2b were improper, this court disagrees that those arguments

13 were harmless.  In finding the prosecutor's improper arguments to be harmless, the Nevada Supreme

14 Court applied a state-law harmless error test that was more deferential than the standard announced

15 in *Chapman v. California*, 386 U.S. 18, 24 (1967) (requiring State to prove beyond a reasonable

16 doubt that the error did not contribute to the verdict).  *See* Order of Affirmance, Exhibit J, p. 4 (ECF

17 No. 20-5, p. 5), citing *Smith v. State*, 120 Nev. 944, 947-48, 102 P.3d 569, 572 (2004).  Because the

18 Nevada Supreme Court did not apply *Chapman*, its harmless error analysis was "contrary to ...

19 clearly established federal law," and is not afforded deference under 28 U.S.C. § 2254(d).

20        This court finds that the prosecutor's improper arguments rendered Matthews' trial

21 fundamentally unfair, in that they conveyed to the jury that there were reasons beyond the evidence

22 to find him guilty, and the court finds, further, that under the circumstances in this case, taking into

23 account the entire trial record, the violation of Matthews' constitutional right to due process of law

24 resulted in actual prejudice to Matthews.

25        Even where constitutional error is found, "in § 2254 proceedings a court must [also] assess

26 the prejudicial impact of constitutional error" under the *Brecht* standard.  *Fry v. Pliler*, 551 U.S. 112,

1   121-22 (2007); *Merolillo v. Yates*, 663 F.3d 444, 454 (9th Cir. 2011).  Habeas relief is warranted

2   only if the error had a "substantial and injurious effect or influence in determining the jury's

3   verdict."  *Brecht*, 507 U.S. at 637-38, citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)

4   (internal quotation marks omitted).  In *Kotteakos*, the Supreme Court explained:

5          [I]f one cannot say, with fair assurance, after pondering all that happened without
          stripping the erroneous action from the whole, that the judgment was not substantially
6          swayed by the error, it is impossible to conclude that substantial rights were not
          affected.  The inquiry cannot be merely whether there was enough to support the
7          result, apart from the phase affected by the error.  It is rather, even so, whether the
          error itself had substantial influence.  If so, or if one is left in grave doubt, the
8          conviction cannot stand.

9   *Kotteakos*, 328 U.S. at 765; *See also Merolillo*, 663 F.3d at 454.  Where "the matter is so evenly

10  balanced" that the habeas court is "in virtual equipoise as to the harmlessness of the error," and is

11  "in grave doubt about the likely effect of an error on the jury's verdict," the court must conclude that

12  the error was not harmless.  *O'Neal v. McAninch*, 513 U.S. 432, 435, 437-38 (1995) (quoting

13  *Kotteakos*, 328 U.S. at 765).

14          The offending comments of the prosecutor in this case misstated the evidence, in that the

15  prosecutor urged the jury to consider, as indicative of guilt, the defendants' appearance and their

16  challenge of the testimony of a prosecution expert witness, neither of which was evidence.  The trial

17  court overruled the objections to the offending comments, and did not give curative instructions.

18  Indeed, with respect to the prosecutor's comments regarding the defendants' appearance, the

19  prosecutor was apparently emboldened after the court overruled the objections, and reiterated:

20  "There's nothing improper about it.  Take a look at them.  Stare at them...."  Transcript of Trial,

21  May 11, 2007, Exhibit E, p. 66 (ECF No. 19-3, p. 67).  Furthermore, because the prosecutor made

22  the offending comments in her rebuttal closing argument, the defense had no opportunity to respond.

23  The prosecution's improper arguments were some of the last arguments the jury heard before

24  deliberating.

25          The evidence against Matthews -- while sufficient to support his convictions, if viewed in the

26  light most favorable to the State (*see* discussion of Claim 1, above) -- had obvious weaknesses and

14

was far from overwhelming.  Unlike Joshlin, who was found in a dumpster with a handgun linked to the shooting, there was no evidence directly linking Matthews to either the shooting or the robbery.  About an hour to an hour and a half after the foot chase ended, Matthews was found hiding in a backyard about a block from where the chase ended, and some four or five blocks from where the shooting and robbery occurred.  The defense suggested, and it remains a possibility, that Matthews had reason to fear apprehension by police other than -- and less egregious than -- having participated in the shooting and robbery.

Matthews, at five feet eleven inches tall, with a corn row hair style, and wearing blue denim shorts and a long-sleeve shirt, did not closely match the descriptions of the assailants given by the victims who testified at trial.  *See* Testimony of Myniece Cook, Transcript of Trial, May 8, 2007, Exhibit B, pp. 138, 147-49 (all black clothing); Testimony of Michel'le Tolefree, Transcript of Trial, May 8, 2007, Exhibit B, pp. 157-58, 161-62 (ECF No. 17-2, pp. 158-59, 162-63) (black clothing, afro hair style), pp. 165 (all black clothing), pp. 165-66 (ECF No. 17-2, pp. 166-67) (assailant five feet six inches to five feet seven inches), p. 168 (ECF No. 17-2, p. 169) (all black clothing), pp. 164-65, 170-73 (ECF No. 17-2, pp. 165-66, 171-74) (assailant wearing blue shorts identified as Joshlin); Testimony of Geishe Orduno, Transcript of Trial, May 8, 2007, Exhibit B, pp. 180-81 (ECF No. 17-2, pp. 181-82) (dark clothing); p. 184 (ECF No. 17-2, p. 185) (dark clothing), pp. 184, 189 (ECF No. 17-2, pp. 185, 190) (white shirt); p. 189 (ECF No. 17-2, p. 190) (pants, not shorts); pp. 190, 196 (ECF No. 17-2, pp. 191, 197) (assailant no taller than five feet five inches); p. 193 (ECF No. 17-2, p. 194) (other than white shirt, all dark clothing, and long pants); Testimony of Melvin Bolden, Transcript of Trial, May 8, 2007, Exhibit B, pp. 202, 205 (ECF No. 17-3, pp. 3, 6 ) (black T-shirts, blue jeans), pp. 206-07 (ECF No. 17-3, pp. 7-8) (short-sleeve black T-shirts), pp. 209, 214 (ECF No. 17-3, pp. 10, 15) (pants), pp. 209-11, 218 (ECF No. 17-3, pp. 10-12, 19) (assailant no taller than five feet seven inches), pp. 213-17 (ECF No. 17-3, pp. 14-18) (pants).  In order to convict Matthews despite the many descriptions that did not match his appearance, the jury had to infer that the descriptions were of assailants other than Matthews, and that none of the victims saw Matthews or

1    recalled his appearance -- an inference generous to the prosecution.  This court has grave doubt about

2    whether the prosecutor's improper arguments, suggesting that Matthews' appearance and his

3    challenge of prosecution evidence alone were reason to believe him guilty, had a substantial

4    influence in leading the jury view the evidence in such a manner.

5         Officers Walter and Cupp identified Matthews as the driver of the stolen car, and Walter

6    identified Matthews as the suspect he chased on foot.  *See* Testimony of Brian Walter, Transcript of

7    Trial, May 8, 2007, Exhibit B, pp. 242-47 (ECF No. 17-3, pp. 43-48); Testimony of Bradley Cupp,

8    Transcript of Trial, May 9, 2007, Exhibit C, pp. 55-56 (ECF No. 18-1, pp. 56-57).  However, Walter

9    and Cupp were subjected to extensive, and rather effective, cross-examination.  *See*, *e.g.*, Testimony

10   of Brian Walter, Transcript of Trial, May 8, 2007, Exhibit B, pp. 269-71 (ECF No. 17-3, pp. 70-72)

11   (Walter got only a glimpse of driver of stolen car), pp. 279-81 (ECF No. 17-3, pp. 80-82) (Walter's

12   foot chase lasted only ten to twenty seconds); p. 282 (ECF No. 17-3, p. 83) (Walter did not say, in

13   statement given to detective, that he got a good look at suspect); pp. 282-87 (ECF No. 17-3, pp. 83-

14   88) (Walter did not say, in statement given to detective, or in prior testimony, that he recognized

15   suspect from prior contact); pp. 287-88, 301 (ECF No. 17-3, pp. 88-89, 102) (during foot chase,

16   Walter gave description of suspect over radio, and described suspect as wearing black clothing, and

17   as five feet eight or nine inches tall, and did not mention corn row hair style or denim shorts); pp.

18   298-302 (ECF No. 17-3, pp. 99-100) (Walter first described suspect as having corn row hair style,

19   and as wearing denim shorts, only after seeing Matthews subsequent to his arrest); Testimony of

20   Bradley Cupp, Transcript of Trial, May 9, 2007, Exhibit C, p. 85 (ECF No. 18-1, p. 86)  (Cupp's

21   identification of Matthews based on instantaneous look).  Here too, with respect to the testimony of

22   Walter and Cupp, this court has grave doubt about whether the prosecutor's arguments suggesting

23   improper reasons beyond the evidence to believe Matthews guilty, had substantial influence upon the

24   jury's decision.

25        This court concludes that the improper comments of the prosecutor -- urging the jury to look

26   at the defendants and asking whether they looked innocent, and arguing that the defense cross-

examination of a prosecution expert witness suggested the defendants' were guilty -- rendered

Matthews' trial fundamentally unfair, violated his federal constitutional right to due process of law,

and had a substantial and injurious influence in determining the jury's verdict.  The court, therefore,

will grant Matthews habeas corpus relief on Claims 2a and 2b of his amended petition for writ of

habeas corpus.

Claim 2d

In Claim 2d, Matthews claims that his federal constitutional rights were violated on account

of prosecutorial misconduct, because a prosecution witness read from a "SCOPE" report, which

contained Matthews' criminal history, to establish his height, and commented that the report

contained arrest information.  *See* First Amended Petition, pp. 23-24.

The exchange that is the subject of this claim, which occurred during the testimony of Officer

Walter, was as follows:

> Q.      Now, there's been some talk about the height of the driver that you were chasing.  Are you familiar with what's called SCOPE?
>
> A.      Yes.
>
> Q.      Okay.  And is SCOPE something that people in the community get, for instance, when they go down and get a sheriff's card and work cards?
>
> A.      Sheriff cards, work cards or arrested, for that matter.
>
> Q.      Okay.  And does that actually, generally, contain identifiers of that particular individual like height and weight and ethnicity?
>
> A.      Yes, sir, it does.
>
> Q.      Okay.
>
> [PROSECUTOR]:      Okay.  And I'm not going to have this marked for various reasons.  We can highlight it out if you want to mark it separately.
>
> THE COURT:      I don't know where you're going.
>
> [DEFENSE COUNSEL]:      Judge, can I approach?
>
> THE COURT:      Yes.
>
> [DEFENSE COUNSEL]:      Thank you.

(Off-record bench conference)

BY [PROSECUTOR]:

    Q.    Do you happen to know what the height of Mr. Matthews was [at the] time?  Do you know?

    A.    No.

    Q.    Okay.  If you looked at a document and it said it was five-nine, would that be correct?

    A.    If that's what it had in the document, yes, sir.

    Q.    Generally --

    [DEFENSE COUNSEL]:    I do object.  I don't understand that question.  If you look at a document, it would tell whose height?  I don't even understand the question he just asked.

    [PROSECUTOR]:    That is about the same type of question as if I told you he was five-eleven, would that sound about right.

    [DEFENSE COUNSEL]:    I don't know if that's a response to my objection.

    [PROSECUTOR]:    I'll withdraw.

    THE COURT:`    Okay.  The [question's] withdrawn.

    [DEFENSE COUNSEL]:    I move to strike it, Your Honor.

    THE COURT:    The question is struck.  The answer is struck.

Transcript of Trial, May 8, 2007, Exhibit B, pp. 318-20 (ECF No. 17-3, pp. 119-21).

Matthews moved for a mistrial based on this testimony, *see* Transcript of Trial, May 8, 2007, Exhibit B, pp. 357-61 (ECF No. 17-3, pp. 158-62), and the trial court ruled as follows:

    THE COURT:  In my research on this issue I've determined that the burden is a manifest necessity that the mistrial be granted based upon the facts.

    I find that [the prosecutor] did, in fact, pull the SCOPE sheet and did refer to it, but referred to it in content-neutral terms which should be supported by the record that many people can have [SCOPE's] including individuals who have work cards.

    Based upon the minimum impact of that information and the understanding that the defense does not wish to have a curative or cautionary instruction, I'm inclined t deny the motion for mistrial at this time.

1   Transcript of Trial, May 9, 2007, Exhibit C, pp. 2-3 (ECF No. 18-1, pp. 3-4).

2         Matthews asserted this claim on his direct appeal, *see* Appellant's Opening Brief, Exhibit I,

3   pp. 17-20 (ECF No. 20-4, pp. 23-26), and the Nevada Supreme Court denied the claim without

4   discussion. *See* Order of Affirmance, Exhibit J, p. 2, footnote 1 (ECF No. 20-5, p. 3).

5         The court finds this claim to be without merit. The reference to the SCOPE report was

6   without mention of any previous arrest of Matthews. It was only a brief uninvited aside by the

7   witness that raised the possibility that the document related to an arrest. And, even if the jury might

8   have understood the SCOPE report to result from an arrest, there was no indication that it resulted

9   from an arrest in a previous case, as opposed to Matthews' arrest in this case. The prosecutor's use

10  of the SCOPE report did not render Matthews' trial unfair. *See Darden*, 477 U.S. at 181.

11        The Nevada Supreme Court's ruling on this claim was not contrary to, or an unreasonable

12  application of Supreme Court precedent, and was not based on an unreasonable determination of the

13  facts in light of the evidence. The court will deny Matthews habeas corpus relief with respect to

14  Claim 2d.

15  <u>Claim 4</u>

16        In Claim 4, Matthews claims that his federal constitutional rights were violated when "the

17  trial court allowed the prosecutor and his witness to vouch that they, in fact, had the 'right guy.'"

18  *See* First Amended Petition, pp. 37-39.

19        Matthews asserted this claim on his direct appeal, *see* Appellant's Opening Brief, Exhibit I,

20  pp. 28-29 (ECF No. 20-4, pp. 34-35), and the Nevada Supreme Court denied the claim without

21  discussion. *See* Order of Affirmance, Exhibit J, p. 5, footnote 3 (ECF No. 20-5, p. 6) .

22        The testimony that is the subject of this claim was that of Officer Walter, regarding his

23  identification of Matthews, after his arrest, as the suspect he had chased. The subject testimony was

24  as follows:

25          Q.    Okay. Towards the end of your statement with homicide detectives,
      do you remember them asking you whether you -- how sure you were of the person

26        that you saw or that they brought you to take a look at was the individual you were
      chasing?

1                                        *   *   *

2                   A.     Yes.

3          BY [PROSECUTOR]:

4                   Q.     Okay.  And what did you tell the homicide detectives?

5                   A.     100 percent sure.

6                   Q.     Okay.  Despite not telling the homicide detectives --

7                                        *   *   *

8          BY [PROSECUTOR]:

9                   Q.     I'm sorry.  Through all that, I missed what your answer was.

10                  A.     Yeah, 100 percent.

11                  Q.     Okay.

12                  A.     Yes.

13                  Q.     So after all of this you feel pretty confident that the person you
observed that evening in custody sometime later was the individual you had been
14   chasing and came out of the Town Car of the driver's side?

15                  A.     Yes, 100 percent sure.

16                  Q.     All right.  Did you have the right guy?

17                  A.     Yes.

18   Transcript of Trial, May 8, 2007, Exhibit B, pp. 322-24 (ECF No. 17-3, pp.123-25).

19          As the court understands Matthews' claim, it is that this testimony was either improper

20   vouching or improper opinion evidence regarding his guilt.  *See* First Amended Petition, pp. 37-39;

21   *see also* Appellant's Opening Brief, Exhibit I, pp. 28-29 (ECF No. 20-4, pp. 34-35) (Matthews'

22   claim as presented to the Nevada Supreme Court on his direct appeal).  It was neither.  Testimony by

23   a witness regarding his or her certainty regarding an identification is proper.  In fact, a witness's

24   certainty regarding an identification is a factor to be considered in determining the admissibility of

25   the identification testimony.  *See Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).  This is so with

26   respect to both an initial identification and a subsequent in-court identification.  *See*, *e.g.*, *Neil v.*

20

1   *Biggers*, 409 U.S. 188, 193-201 (1972); *see also Manson*, 432 U .S. at 110 n. 10 ("[I]f the challenged

2   identification is reliable, then testimony as to it and any identification in its wake is admissible.").

3   Matthews' claim that such testimony was improper vouching or improper opinion testimony is

4   meritless.

5          The Nevada Supreme Court's ruling on this claim was not contrary to, or an unreasonable

6   application of Supreme Court precedent, and was not based on an unreasonable determination of the

7   facts in light of the evidence.  The court will deny Matthews habeas corpus relief with respect to

8   Claim 4.

9          Claim 6

10         In Claim 6, Matthews claims that his federal constitutional rights were violated as a result of

11  ineffective assistance of his trial counsel because counsel did not move to sever his trial from the

12  trial of his codefendant, Pierre Joshlin.  *See* First Amended Petition, pp. 42-48.

13         Matthews asserted this claim in his state habeas petition.  *See* Petition for Writ of Habeas

14  Corpus, Exhibit O, pp. 5-9 (ECF No. 20-10, pp. 6-10); Amended Supplemental Points and

15  Authorities in Support of Petition for Writ of Habeas Corpus (Post-Conviction), Exhibit P, pp. 7-12

16  (ECF No. 20-11, pp. 8-13).  The state district court held an evidentiary hearing in the state habeas

17  action, *see* Recorder's Transcript, October 12, 2012, Exhibit Q (ECF No. 20-12), and then denied the

18  claim, ruling as follows:

19         Defendant did not establish that severance of his trial from his co-defendant
           was warranted.
20
           Defendant failed to establish that the evidence at trial was significantly greater
21         against one defendant than another.

22         Even to the extent evidence of guilt was greater against one defendant than
           another, Defendant's trial counsel ... testified that there existed no legal basis for
23         severance of Defendant's trial.

24         Any motion for severance would have been futile.

25         Defendant received effective assistance of trial counsel.

26                                    *    *    *

1        Since Defendant failed to illustrate any specific right that a joint trial would
have compromised or any circumstances that would have prevented the jury from
2      making a reliable judgment about guilt or innocence, there was no ground upon which
a severance could have been granted.  Moreover, since the post-conviction writ was
3      the basis for severance, and this Court found that it would not have granted a motion
for severance had it been brought before trial, any motion seeking severance would
4      have been futile and cannot provide Defendant relief.

5   Findings of Fact, Conclusions of Law and Order, Exhibit R, pp. 3-6 (ECF No. 20-13, pp. 4-7).

6   Matthews appealed, and the Nevada Supreme Court ruled as follows:

7        On appeal from the denial of his December 14, 2010, petition, appellant
argues that the district court erred in denying his claim that trial counsel was
8      ineffective for failing to file a motion to sever the proceedings.  To prove ineffective
assistance of counsel, a petitioner must demonstrate that counsel's performance was
9      deficient in that it fell below an objective standard of reasonableness.  *Strickland v.
Washington*, 466 U.S. 668, 687-88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432-33,
10     683 P.2d 504, 505 (1984) (adopting the test in *Strickland*).  A petitioner must also
demonstrate resulting prejudice by showing that the motion was meritorious, *cf.
11     Kirksey v. State*, 112 Nev. 980, 990, 923 P.2d 1102, 1109 (1996), and that there was a
reasonable probability that, but for counsel's errors, the outcome of the proceedings
12     would have been different.  *Strickland*, 466 U.S. at 687-88; *Lyons*, 100 Nev. at 432-
33.  Both deficiency and prejudice must be shown.  *Strickland*, 466 U.S. at 697.

13

14        Appellant argues that counsel was ineffective for failing to file a motion to
sever his case from that of his codefendant because the State's case against the
15     codefendant was significantly stronger than that against appellant.  Appellant has
failed to demonstrate deficiency or prejudice.  This court has held that "a defendant is
16     not entitled to a severance merely because the evidence admissible against a co-
defendant is more damaging than that admissible against the moving party."  *Lisle v.
17     State*, 113 Nev. 679, 690, 941 P.2d 459, 466 (1997), *limited on other grounds by
Middleton v. State*, 114 Nev. 1089, 1117 n.9, 968 P.2d 296, 315 n.9 (1998).
18     Accordingly, a motion based solely on the disparity of evidence would have lacked
merit, and appellant offers no other basis for counsel to have filed the motion.
19     Where, as here, the motion would have been futile, counsel was not ineffective in
failing to file it.  *Donovan v. State*, 94 Nev. 671, 675, 584 P.2d 708, 711 (1978).
20     Moreover, this court held on direct appeal not only that sufficient evidence supported
appellant's conviction but also that "significant evidence" did.  *Matthews v. State*,
21     Docket No. 50052 (Order of Affirmance, June 30, 2009).  We therefore conclude that
the district court did not err in denying the petition....

22   Order of Affirmance, Exhibit T, pp. 1-2 (ECF No. 20-15, pp. 2-3).

23      In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two

24   prong test for analysis of claims of ineffective assistance of counsel:  the petitioner must demonstrate

25   (1) that the defense attorney's representation "fell below an objective standard of reasonableness,"

26   and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of

ineffective assistance of counsel must apply a "strong presumption" that counsel's representation

was within the "wide range" of reasonable professional assistance. *Id.* at 689. The petitioner's

burden is to show "that counsel made errors so serious that counsel was not functioning as the

'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. And, to establish

prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had

some conceivable effect on the outcome of the proceeding." *Id* 693. Rather, the errors must be

"so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state court has adjudicated a claim of ineffective assistance of counsel under

*Strickland*, establishing that the decision was unreasonable under 28 U.S.C. § 2254(d) is especially

difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the Supreme Court instructed:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 994-95 (9th Cir. 2010)

(acknowledging double deference required for state court adjudications of *Strickland* claims).

In analyzing a claim of ineffective assistance of counsel under *Strickland*, a court may first

consider either the question of deficient performance or the question of prejudice; if the petitioner

fails to satisfy one prong, the court need not consider the other. *See Strickland*, 466 U.S. at 697.

Matthews claims that his trial counsel was remiss for failing to move, either before or during

trial, to sever his trial from Joshlin's trial. Matthews argues that the evidence against Joshlin was

stronger than the evidence against him, and also that Joshlin's counsel was ineffective, and on those

1  bases, a motion to sever would have been granted.  *See* First Amended Petition, pp. 42-48; Reply,

2  pp. 23-28.

3      The Nevada Supreme Court ruled that, under Nevada law, severance was not warranted, and

4  that, therefore, Matthews' trial counsel was not ineffective for failing to move for severance, and

5  Matthews was not prejudiced by any such failure.  *See* Order of Affirmance, Exhibit T, pp. 1-2 (ECF

6  No. 20-15, pp. 2-3).  These rulings by the Nevada Supreme Court, based on Nevada law, are

7  authoritative, and beyond the scope of this court's federal habeas review.  *See Estelle v. McGuire*,

8  502 U.S. 62, 68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court

9  determinations on state-law questions."); *Bains v. Cambra*, 204 F.3d 964, 971 (9th Cir. 2000) ("[A]

10  federal court is bound by the state court's interpretations of state law.").  Federal habeas courts are

11  only concerned with errors of state law if they rise to the level of federal constitutional violations.

12  *See Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir. 1989).  Matthews has not made any

13  showing that his federal constitutional rights were violated by the failure to sever his trial from

14  Joshlin's trial.  Therefore, the ruling by the Nevada Supreme Court that there was no basis for a

15  motion to sever is unassailable, and leads to the conclusions that Matthews' trial counsel was not

16  ineffective, and that Matthews was not prejudiced by counsel's failure to move for severance.

17      The Nevada Supreme Court's ruling on this claim was not contrary to, or an unreasonable

18  application of *Strickland*, or any other Supreme Court precedent, and was not based on an

19  unreasonable determination of the facts in light of the evidence.  The court will deny Matthews

20  habeas corpus relief with respect to Claim 6.

21  <u>Certificate of Appealability</u>

22      Respondents do not need a certificate of appealability to appeal from this order, insofar as it

23  grants Matthews relief on Claims 2a and 2b.  However, if respondents appeal the ruling on

24  Claims 2a and 2b, Matthews would need a certificate of appealability to cross-appeal with regard to

25  any of Claims 1, 2d, 4 and 6, as to which this court denies relief.  *See Rios v. Garcia*, 390 F.3d 1082,

26  1087-88 (9th Cir. 2004).

The standard for issuance of a certificate of appealability calls for a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). The Supreme Court has interpreted 28 U.S.C. §2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000). The Supreme Court further illuminated the standard in *Miller-El v. Cockrell*, 537 U.S. 322 (2003). The Court stated in that case:

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Miller-El*, 123 S.Ct. at 1040 (quoting *Slack*, 529 U.S. at 484).

The court has considered Matthews' Claims 1, 2d, 4 and 6, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and the court determines that a certificate of appealability is unwarranted. The court will deny Matthews a certificate of appealability.

**IT IS THEREFORE ORDERED** that petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 14) is **GRANTED** with respect to Claims 2a and 2b. The respondents shall, within 180 days from the date of this order, release petitioner from custody on the convictions that are the subject of his Amended Petition for Writ of Habeas Corpus in this action, unless, within 60 days from the date of this order, the respondents file in this case a written notice of the State's election to retry petitioner, and initiate proceedings toward the new trial within 180 days from the date of this order.

1   **IT IS FURTHER ORDERED** that petitioner's Amended Petition for Writ of Habeas

2 Corpus (ECF No. 14) is **DENIED** in all other respects.

3   **IT IS FURTHER ORDERED** that petitioner is denied a certificate of appealability with

4 respect to Claims 1, 2d, 4 and 6 of his Amended Petition for Writ of Habeas Corpus (ECF No. 14).

5   **IT IS FURTHER ORDERED** that the Clerk of the Court shall **ENTER JUDGMENT**

6 **ACCORDINGLY.**

7

8   Dated this _31_ day of March, 2017

9

10

11        UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26